KANAWHA GAS & UTILITIES COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25715.    Promulgated March 9, 1953.

*William Bew White, Jr., Esq.,* and *Bernard A. Monaghan, Esq.,* for the petitioner.

*S. Earl Heilman, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge:* These proceedings involve the question of basis with respect to gas properties that were sold by the petitioner in 1943, and incidentally some that were sold in 1941 and 1942 because of loss carry-overs from those years to 1943.

In 1929 the petitioner corporation acquired 194 operating gas properties, of which 62 were acquired by purchase from individuals and partnerships and 132 through the liquidation of 8 corporations whose stocks it had purchased. Of the total of $1,300,000 paid by the petitioner, the respondent has determined that $435,500 represents the cost, and basis, of 62 properties purchased. He has further determined that $132,000, or $1,000 for each of the other 132 properties, is the depreciated cost to the 8 former corporate owners and the basis to the petitioner.

The respondent's position is that section 141 of the Revenue Act of 1928 required as a condition of the privilege of filing consolidated returns that all members of the affiliated group consent to the consolidated return regulations prescribed by the Commissioner, with the approval of the Secretary, and that those regulations, and similar regulations subsequently promulgated, require the petitioner to use

the basis of the 8 transferor corporations. Both parties quote from Regulations 75, which were applicable to the taxable year 1929 and subsequent years, as follows:

Art. 37.—Dissolutions—Recognition of Gain or Loss.

(a) *During Consolidated Return Period.*

Gain or loss shall not be recognized upon a distribution during a consolidated return period, by a member of an affiliated group to another member of such group, in cancellation or redemption of all or any portion of its stock; and any such distribution shall be considered an intercompany transaction.

Art. 38.—Basis of Property.

(a) *General Rule.*

Subject to the provisions of paragraph (*b*), the basis during a consolidated return period for determining the gain or loss from the sale or other disposition of property, or upon which exhaustion, wear and tear, obsolescence, and depletion are to be allowed, shall be determined and adjusted in the same manner as if the corporations were not affiliated (see sections 111 to 115, inclusive, of the Act), whether such property was acquired before or during a consolidated return period. Such basis immediately after a consolidated return period (whether the affiliation has been broken or whether the privilege to file a consolidated return is not exercised) shall be the same as immediately prior to close of such period.

(b) *Intercompany Transactions.*

The basis prescribed in paragraph (*a*) shall not be affected by reason of a transfer during a consolidated return period (whether by sale, gift, dividend, upon dissolution, or otherwise) from a member of the affiliated group to another member of such group.

The respondent further quotes from Internal Revenue Code section 113 (a) (11), which provides in material part that:

The basis in case of property acquired by a corporation during any period, in the taxable year 1929 or any subsequent taxable year, in respect of which a consolidated return is made by such corporation under section 141 of . * * * the Revenue Act of 1928, * * * shall be determined in accordance with regulations prescribed under section 141(b) of * * * the Revenue Act of 1928 * * *

The petitioner's position is that it was the intended objective of Chase & Gilbert, Inc., to acquire all of 194 operating properties and place them in one corporation, and that the preceding transactions were interrelated and interdependent steps in a unitary plan. It says that where such facts exist the intended and attained objective of a series of transactions should be given that effect for tax purposes which the plan and objective require when viewed as a whole; that the several steps should not be treated as independent transactions at the cost of distorting the clear effect of the plan.

There are many decisions which, in the abstract, support the petitioner's argument. See, for example, *Schumacher Wall Board Corporation*, 33 B. T. A. 1211, where the question of basis depended on whether there was control in the same persons before and immediately after the transfer of assets. Control did exist in an investment banking house, but at the time it received the stock it was bound by

contract to convey it to others. In holding for the taxpayer in that case, we said, quoting from *Wilbur F. Burns*, 30 B. T. A. 163, that "the question of control is to be determined by the situation existing at the time of the completion of the plan rather than at the time of fulfillment of one of the intermediate steps." The language was quoted with approval by the Ninth Circuit Court of Appeals in affirming our decision at 93 F. 2d 79. The Circuit Court in that case also quoted the rule often announced by the Supreme Court that in matters of taxation it recognized the "importance of regarding matters of substance and disregarding forms * * *." See *United States* v. *Phellis*, 257 U. S. 156.

In the application of such general rules, proper regard must be had for the provisions of the particular statute and regulations under consideration and the facts of the case being decided compared with those in which the rules were announced. When this is done here, we think the issue in these proceedings must be decided for the respondent.

Under Revenue Acts prior to that of 1928, affiliated corporations were either required or permitted to file consolidated returns. However, none of the prior acts required consent to the regulations prescribed for the filing of such returns, nor specifically delegated to administrative officers the authority to prescribe such regulations as they might deem necessary in order to determine the tax liability of the group and of each corporation in the group both during and after the period of affiliation. Section 141 of the Revenue Act of 1928 required such consent and granted such authority. The provisions of section 141 were given careful consideration by the Congress in the enactment of the Revenue Act of 1928. The Senate Finance Committee, after referring to the history of consolidated return provisions under prior acts, said in part (S. Rept. No. 960, 70th Cong., 1st sess., p. 15; 1939–1 C. B. (Part 2) 409, 419):

> Many difficult and complicated problems, however, have arisen in the administration of the provisions permitting the filing of consolidated returns. It is, obviously, of utmost importance that these questions be answered with certainty and a definite rule be prescribed. Frequently, the particular policy is comparatively immaterial, so long as the rule to be applied is known. The committee believes it to be impracticable to attempt by legislation to prescribe the various detailed and complicated rules necessary to meet the many differing and complicated situations. Accordingly, it has found it necessary to delegate power to the Commissioner to prescribe regulations legislative in character covering them. The standard prescribed by the section keeps the delegation from being a delegation of pure legislative power, and is well within the rules established by the Supreme Court. (See *Hampton, Jr., & Co.* v. *United States*, decided by the Supreme Court on April 9, 1928, and cases there cited.) Furthermore, the section requires that all the corporations joining in the filing of a consolidated return must consent to the regulations prescribed prior to the date on which the return is filed.

Among the regulations which it is expected that the Commissioner will prescribe are: (1) The extent to which gain or loss shall be recognized upon the sale by a member of the affiliated group of stock issued by any other member of the affiliated group or upon the dissolution (whether partial or complete) of a member of the group; (2) the basis of property (including property included in an inventory) acquired, during the period of affiliation, by a member of the affiliated group, including the basis of such property after such period of affiliation; * * *

The House agreed with the proposed section 141, as presented by the. Senate Committee on Finance, with a clarifying amendment as to insurance companies, Amendment No. 91, H. Rept. No. 1882, 70th Cong., 1st sess., p. 16, 1939–1 C. B. (Part 2) 444, 448.

In view of such specific delegation of power to administrative officers to promulgate regulations, and which has been continued in successive revenue acts, a clear showing must be made of authority to cut across such regulations and to reach a result other than that spelled out by the regulations. General rules which under some facts and some statutes might permit the disregard of intermediate steps in a so-called step plan are not sufficient to permit the disregard of any step in a case like this where the regulation is specific and the power to make it is as specific as it is in the Revenue Act of 1928.

The cases cited by the petitioner are not persuasive authority for its position. A case strongly relied on by the petitioner is *Muskegon Motor Specialties Co.*, 35 B. T. A. 851. In that case, a Delaware corporation organized late in 1928 acquired the stock of two existing Michigan corporations. It was contemplated by the organizers and the bankers that the Delaware corporation would as soon as practicable acquire the assets of the Michigan corporations. The transfer of assets took place on January 23, 1929. All three corporations filed separate income tax returns for the year 1929. In each of the three returns it was stated that it was not a consolidated return.

Upon the foregoing facts, we held that the basis of the depreciable assets acquired by the Delaware corporation from the Michigan corporations was not limited to the latters' basis. We said in part:

The filing of a consolidated return is a matter of election by affiliated corporations. *Oklahoma Contracting Corporation*, 35 B. T. A. 232, 237. The regulations lay down detailed instructions as to the formalities to be complied with by corporations seeking the privilege of making a consolidated return. Among other things, the consolidated return must be made by the parent for the group. The parent must prepare and file form 851 and the subsidiaries must prepare and file form 1122 consenting to the regulations and authorizing the parent to file for them. These formalities were not met. Each corporation filed its own return and neither form 851 nor form 1122 was filed. What is more important is that according to the evidence these matters were considered and a deliberate election was made not to file a consolidated return and not to meet the conditions which were necessary to the filing of such a return. On the contrary, it was intended that separate returns be filed and that was done. Consequently, it can not be held that a consolidated return was filed.

We also discussed in the opinion arguments as to whether the dissolution of the old companies and the acquisition of their assets by the new was part of the original plan, but the real basis for our holding is in the language above quoted. The fact that in the *Muskegon* case no consolidated return was filed, and there was a deliberate election not to file such a return, readily distinguishes that case from the present one.

The case of *Ruth M. Cullen*, 14 T. C. 368, is not in point as it did not involve either affiliated corporations or consolidated return. In that case, the individual holders of a minority of corporate stock purchased the stock of other stockholders and liquidated the corporation. The questions for decision concerned only the realization of gain or loss by the individuals on the liquidation.

The case of *Kimbell-Diamond Milling Co.*, 14 T. C. 74, affd. per curiam, 187 F. 2d 718, likewise did not involve any question growing out of affiliation or consolidated returns. There the taxpayer, following an involuntary conversion, with intent to acquire the assets of another corporation, purchased all of its stock and within a few days liquidated it. It sought a stepped-up basis for the depreciable assets under the provisions of Code sections 112 (b) (6) and 113 (a) (15).

Of the cases cited, the one that is most nearly like the present one on the facts is *Commissioner* v. *Ashland Oil & Refining Co.*, 99 F. 2d 588, which reversed the holding in *Swiss Oil Corporation*, 32 B. T. A. 777. In that case, Swiss in 1924 obtained an option to purchase all of the stock of Union Gas & Oil Company for cash and notes. The stock was placed in escrow pending the making of certain cash payments. The last required payment was made late in 1925, the escrowed stock was delivered on January 2, 1926, to Swiss which thereupon liquidated Union and acquired its properties. Swiss, Union, and another corporation filed a consolidated return for the year 1925 which included income and deductions of Union for the period February 2, 1925, to December 31, 1925.

One of the questions in that case was whether Swiss realized a gain on the liquidation of Union in 1926. The Circuit Court held that it did not on the ground that the entire transaction between the corporations was essentially one for the acquisition of property, and the intervening steps should not be separately regarded either at the instance of the taxpayer or the taxing authority. It also held that the filing of a consolidated return for the year 1925 was unimportant, and for this proposition it cited *Muskegon Motor Specialties Co.*, *supra*.

For the year in suit in the *Ashland* case, whatever regulations there were as to the filing of consolidated returns did not have the statutory sanction that was given to them by section 141 of the Revenue Act of 1928. It may be that for that reason the Court felt it proper to disregard intervening steps. At any rate, we think that the absence

of legislation on the subj ct in 1926 is an effective distinction between the *Ashland* case and the ne before us.

The petitioner further contends that the consents filed by the 8 corporations whose stock was acquired by the petitioner had no legal effect. This is based on its view that the transfers of properties should be given effect as of August 1, 1929, in the case of Laurel Development Company and as of June 1, in the case of the other 7 corporations. It says that after those dates the 8 corporations could have no income or deductions to be included in a consolidated return.

We think that this contention is based on too light a consideration of the existence of the 8 corporations and their continued ownership of properties. All of them continued their corporate existence throughout the year 1929. They continued to be the owners of their properties until December 19, 1929, when they were transferred to the petitioner. During that time, they had income from and expenses with respect to their properties. While such income and expenses became those of the petitioner, that was by reason of contract, and the income and expenses were initially those of the 8 corporations. Accordingly, we cannot say that the consents filed should not be given effect.

Finally, the petitioner contends that if its basis as to the 132 operating properties is limited to that of the eight corporations, then its basis as to the 62 properties acquired from individuals and partnerships must be increased. It develops on brief a set of figures, and arrives at an amount of $46,124.84 which it says was the portion of Anderson Development Company's profits that is allocable to the 62 properties.

The petitioner's position on this point is not based on proof. We do not know what Anderson Development Company agreed to pay for the 62 properties, but what is more important we do not know how much the petitioner paid for them. Certainly we cannot say that the petitioner's basis was greater than cost. An agent of the respondent attempted to ascertain how the total of $1,300,000 should be distributed. On the basis of what records were available, he determined that $740,000 was the cost of the stock of the 8 corporations and $435,500 was the cost of the 62 properties. The remainder of $124,500 he reported to be unidentified. On the record before us, we cannot determine what portion, if any, of the $124,500 should be allocated to the 62 properties as part of their cost to the petitioner.

Reviewed by the Court.

*Decision will be entered for the respondent.*