John J. Harden, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Frances Hale Harden, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

John J. Harden and Helen L. Harden, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 40672, 40673, 40674. Promulgated February 26, 1954.

*Graham Loving, Jr., Esq.*, and *L. Karlton Mosteller, Esq.*, for the petitioners.

*W. B. Riley, Esq.*, for the respondent.

### OPINION.

Murdock, *Judge:* The issues for decision are whether the Commissioner erred (1) by including in income for each year the entire amount received from the sale of burial crypts without subtracting or deducting the cost of constructing other crypts and (2) in adding to income interest from municipal bonds withdrawn by the petitioner from a trust. The parties' stipulation of facts and exhibits attached thereto, together with Exhibit 19, are adopted as findings of fact.

John J. Harden will be referred to herein as the petitioner. Frances, from whom he was divorced on May 26, 1947, and Helen, whom he married on December 1, 1947, are involved herein only because of their relationship to him.

The petitioners filed their returns for the taxable years with the collector of internal revenue for the district of Oklahoma.

The petitioner established the Rose Hill Burial Park, a property trust, on December 14, 1917. He was not a trustee of that trust. Property in Oklahoma City was transferred to the trust by Ella D. Classen and the trustees declared that they held it in trust for the purposes of a cemetery or place of interment. The petitioner on that same day entered into a contract with the trustees acknowledging that the petitioner had made improvements to the cemetery and constituting him general manager of the cemetery. He was to make any further improvements at his own expense.

The petitioner began to construct a mausoleum in the cemetery in 1936. The building was to be two stories high when completed and was to be rectangular in shape with an uncovered opening in the center. Title to a small oval-shaped piece of ground, the site of the proposed mausoleum, was placed in the name of the petitioner on March 19, 1937, by transfers between the petitioner and the trust, and he executed a declaration of trust on that day providing, *inter alia*, that henceforth he would hold the mausoleum in trust "dedicated perpetually for the interment of the dead" with the right in himself to sell crypts in the structure and retain the proceeds from such sales. The trust agreed to supervise and maintain the mausoleum and the ground on which it was situated. One side of the proposed mausoleum was completed in 1941 at a cost to the petitioner of $127,837.29. The petitioner started to construct a second side of the mausoleum in 1947.

The petitioner kept his books on the basis of cash receipts and disbursements. He had made many sales prior to 1947 of crypts located in the side of the mausoleum first constructed and in reporting his income from those sales during those years had claimed the right and had been allowed to recover the entire cost of that side of the mausoleum tax free before tax was computed on his income from sales during those years of crypts located in that portion of the mausoleum. The petitioner made additional sales of crypts located in that portion of the mausoleum in 1947 and 1948. The proceeds of those sales amounted to $34,965.47 in 1947 and to $34,040.19 in 1948. He did not report those amounts in his returns for those years but reported no income from the 1947 sales of crypts and only $23,507.49 on the 1948 sales. That was because he first subtracted from those receipts $37,173.62 spent in 1947 and $8,324.55 spent in 1948 on the construction of the new or second side of the mausoleum, although he did not sell in 1947 or 1948 any crypts located in that portion of the mausoleum.

The Commissioner, in determining the deficiency for 1947, added $26,224.10, representing increased mausoleum sales, to the petitioner's reported income and explained:

(c) During the taxable year, you collected $34,965.47 from sales of burial crypts in the mausoleum at Rose Hill Burial Park, Oklahoma City, Oklahoma. Your investment in the crypts sold during the year 1947 had been fully re-

covered in prior taxable years. In 1947, you invested $37,173.62 in additions to the mausoleum which amount was offset against collections to the extent of $34,965.47 and the remaining cost of $2,208.15 was deducted in the year 1948. It has been determined that the cost of the addition to the mausoleum is not deductible since there were no sales of newly constructed crypts during the taxable year and that mausoleum sales should be increased by the amount of the unreported collections, $34,965.47. Under the Oklahoma community property law of 1945, 18/24 of $34,965.47, or $26,224.10, was taxable to you and your net income has been increased by this amount.

The Commissioner, in determining the deficiency for 1948, added $10,532.70, representing increased mausoleum sales, to the petitioner's reported income and gave the following explanation:

(a) In your return for the taxable year ended December 31, 1948, you reported income from mausoleum sales in the amount of $23,507.55 [*sic*]. In computing the income reported, you deducted 1947 and 1948 construction costs of $2,208.15 and $8,324.55, respectively, a total of $10,532.70. Inasmuch as there were no sales of crypts constructed in 1947 and 1948, and your investment in those that were sold in 1948 had been fully recovered in prior taxable years, it has been held that construction costs of $10,532.70 were not deductible.

The petitioner should have reported in 1947 and 1948 the full amount of the proceeds which he received from sales of crypts in the mausoleum because he had previously recovered tax-free the cost of those crypts sold in those years. The cost of constructing new crypts, none of which were sold in 1947 and 1948, could not be deducted as the cost of the crypts sold in 1947 and 1948. The adjustments which the Commissioner made were proper. He did not in any way change the petitioner's method of accounting but merely corrected the errors which the petitioner made on his 1947 and 1948 returns. The petitioner in the future will no doubt sell crypts from the newly constructed side of the mausoleum and when those sales are made he can deduct their cost in computing his gross income from those sales. He points to no provision of the Internal Revenue Code under which he may subtract or deduct the cost of the new construction in computing his income from the sales of crypts in the old portion of the mausoleum.

The agreement between the petitioner and the trust entered into on December 14, 1917, provided, *inter alia*, that 10 per cent of the gross sales price received for lots in the cemetery "shall be delivered to the Trust as and for a perpetual care fund" and 20 per cent of the gross sales prices "shall be placed in a current expense fund." The income from the perpetual care fund was to be added to the expense fund. The expense fund was to be deposited subject to checks drawn by the petitioner and was to be used insofar as necessary for the payment of office rent of the trust and the petitioner, for all clerical and stenographic help, office supplies, necessary automobiles, labor, supplies and work at the cemetery, maintenance and upkeep, including that of any community mausoleum which might be established, and for cur-

rent material bills except for those which were to be paid by the petitioner. The petitioner was to pay the above expenses from his own funds if the expense fund was insufficient in any year and if there was any amount remaining in the expense fund at the end of any year, he was to receive 80 per cent of it "as a part of the compensation of said Harden for the undertaking and for the performance of his undertakings and obligations hereunder."

The following facts are hereby found:

The perpetual care fund owned municipal bonds from which it received interest of $3,216 in 1947 and $3,527.50 in 1948. That interest, along with other income of the perpetual care fund, was added to the expense fund, paid over to the petitioner and was used by him to pay the expenses of the cemetery and mausoleum as authorized in the agreement of December 14, 1917.

The Commissioner, in determining the deficiency for 1947, added to the income reported by the petitioner $2,412 described as "Income from current maintenance fund increased" for which the following explanation was given:

(a) During the taxable year 1947, you received $13,021.62 from a trust fund set aside for the maintenance of Rose Hill Burial Park, Oklahoma City, Oklahoma. In computing your net profit from burial park operations you included $9,805.62 of the amount received from the trust fund in income from current maintenance fund, and claimed that the balance of $3,216.00 was nontaxable. It has been determined that the entire amount received was taxable. Inasmuch as income from this source was community income, your taxable portion under the Oklahoma community property law of 1945 was 18/24 of $3,216.00, or $2,412.00.

The Commissioner, in determining the deficiency for 1948, increased the petitioner's reported income by $3,527.50 described as "Income from current maintenance fund increased" for which the following explanation was given:

(d) During 1948, you received $11,332.19 from a trust fund for maintenance of Rose Hill Burial Park. Of this amount, you included $7,804.69 in your income, and claimed that the balance of $3,527.50 was nontaxable. It has been held that the entire amount received from the trust fund was taxable and therefore, your net income should be increased by the amount of $3,527.50.

The parties argue on the second point as to whether the municipal bond interest retained its exempt character when it came into the hands of the petitioner. He reported as his income all but the municipal interest of the amount which he received from the trust pursuant to the provisions of the agreement between him and the trust dated December 14, 1917. Those provisions as shown above required that the income from the perpetual care fund be added to the expense fund and the whole be used by the petitioner to pay various expenses of the business insofar as necessary. This record indicates that the amounts thus withdrawn by the petitioner during the taxable years would not affect his net income if properly reported because he used all of the

money to pay expenses incurred in the operation of the cemetery. If he took the entire amount into his gross income in each year and then deducted it all as expenses, the result would be the same as it would be if he took none of it into his income and deducted none of it as expenses. Instead, he took part of it into his income and apparently deducted all of it as expenses. Consequently, the net result arrived at by the Commissioner's adjustments is a proper one because it puts the whole amount withdrawn into income and allows it to be entirely offset by deductions of the expenses for which the money was expended. The petitioner may not further reduce his income by excluding the part of the funds which came from municipal bond interest.

*Decisions will be entered for the respondent.*