> *Decision will be entered under Rule 50.*

AMERICAN WATER WORKS COMPANY, INC. AND AFFILIATED COMPANIES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54065, 56532. Filed January 31, 1956.

---

[2] REGULATIONS 111.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

When used in these sections (29.23(m)-1 to 29.23(m)-28, inclusive) covering depletion and depreciation—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

*George Craven, Esq.*, for the petitioners.
*Stephen P. Cadden, Esq.*, for the respondent.

906

OPINION.

MULRONEY, *Judge:* The petitioner does not contest certain items and, as a result, the issues remaining are (1) whether the basis of stock held by the petitioner in affiliated corporations should be reduced by the amounts of capital distributions made by the issuing corporations to the petitioner in years when consolidated returns were filed, and (2) whether the basis of stock held by the petitioner in an affiliated corporation should be reduced by the amount of net operating losses sustained by the issuing corporation and availed of in years when consolidated returns were filed which included the two corporations, but before the particular shares of stock in question were issued.

Those items in dispute which pose the first issue shall be considered here together. Petitioner in 1948 sold 5,200 shares of the common stock of Texarkana, an affiliated corporation, which was all the outstanding stock of Texarkana. The petitioner had acquired this stock in 1947 from the transferor. The transferor had acquired 4,000 shares of the stock in 1926, at which time this was all the outstanding stock of Texarkana, and in 1941 had acquired an additional 1,200 shares of newly issued stock in Texarkana. Capital distributions amounting to $168,714.47 had been made in prior years by Texarkana to the petitioner and its transferor on the 4,000 shares of common stock; of this amount $54,407.57 was distributed in those years when consolidated returns were filed which included Texarkana and the petitioner, and $114,306.90 was distributed in years when Texarkana was not included in consolidated income tax returns with the petitioner. On the 1,200 shares of Texarkana common stock, the petitioner received from Texarkana a total of $28,322.27 in capital distributions. Of this amount, $15,122.27 was distributed in years when consolidated income tax returns were filed which included Texarkana and the petitioner,

and $13,200 was distributed in years when Texarkana was not included in consolidated returns with the petitioner. The unadjusted basis of the stock to the petitioner in 1948 was $84,558.54 for the 4,000 shares and $115,755.55 for the 1,200 shares. The petitioner sold the 5,200 shares of Texarkana common stock in 1948 for a total consideration of $1,816,748.14. In determining the gain from this sale of stock, the respondent adjusted the basis of the 4,000 shares by the entire amount of the capital distributions made to the petitioner or its transferor, reducing such basis to zero, and the basis of the 1,200 shares was also adjusted by the entire amount of such capital distributions on the 1,200 shares, reducing the basis by that amount ($28,322.27). The petitioner does not dispute that the basis of the stock sold by it should be reduced by the amount of capital distributions made to it by Texarkana in those years when Texarkana was not included in consolidated income tax returns with the petitioner or its transferor. But the petitioner does contend that the basis of the stock should not be reduced by any capital distributions made in years when Texarkana was included in consolidated returns filed by the petitioner or its transferor.

The respondent argues that the pertinent sections in Regulations 104, applicable here, require the reduction of the basis of stock where the issuing corporation makes capital distributions to the parent corporation on such stock in years when consolidated income tax returns are filed including both such corporations. We agree with the respondent. Consolidated returns pose some difficult and complicated problems, and in the committee report accompanying the Revenue Bill of 1928, Congress indicated that it was "necessary to delegate power to the Commissioner to prescribe regulations legislative in character covering them." S. Rept. No. 960, 70th Cong., 1st Sess., 1939–1 C. B. (Part 2) 409, 419. This Court has indicated that "In view of such specific delegation of power to administrative officers to promulgate regulations * * * a clear showing must be made of authority to cut across such regulations and to reach a result other than that spelled out by the regulations." *Kanawha Gas & Utilities Co.*, 19 T. C. 1017, revd. 214 F. 2d 685.

Section 23.34 of Regulations 104 prescribes the basis for the determination of gain or loss upon the sale by a member of an affiliated group of stock issued by another member of such group. Subsection (c) of section 23.34 deals with sales of stock made after March 1, 1945, and it is applicable whether or not, as a result of such sale, the issuing corporation ceases to be a member of the affiliated group. Subsection (c), in such instances, determines the basis of the stock as follows:

The aggregate basis of all shares of stock of the issuing corporation held by each member of the affiliated group (exclusive of the issuing corporation) immediately

prior to the sale shall be determined separately for each member of the group, *and adjusted in accordance with the Code,* but without regard to any adjustment under the last sentence of section 113 (a) (11) with respect to losses of the issuing corporation sustained by such corporation after it became a member of the affiliated group. [Emphasis added.]

It is the plain meaning of the regulation that the basis of stock, under the circumstances defined in section 23.34 must be adjusted in the way the Internal Revenue Code of 1939 prescribes. Provisions for adjustments to basis in determining gain or loss from the sale of property appear in section 113 of the Code. Subsection 113 (b) (1) (D) provides that in the case of stock there shall be a reduction of basis "for the amount of distributions previously made which, under the law applicable to the year in which the distribution was made, either were tax-free or were applicable in reduction of basis." Section 115 (d) of the Code provides that where a stockholder receives corporate distributions which are not out of an increase in value of property accrued before March 1, 1913, and are not dividends, the amount of such distributions must be applied in reduction of the basis of stock held by such stockholder.

The petitioner argues that there should be no reduction in the basis of its stock in Texarkana due to the capital distributions made to it by Texarkana in years when consolidated income tax returns were filed by the two corporations. No support for the petitioner's argument can be found in section 23.31 (*d*) (2) of Regulations 104. This section states that capital gains and losses on a consolidated return shall be determined without regard to "gains or losses arising in intercompany transactions." Such a transaction is not before us. We have in this case a sale of stock by the petitioner to a party outside the affiliated group, and any gain arising from such sale cannot be regarded as arising in an intercompany transaction. The petitioner also supports his argument on section 23.38 (*a*) and (*b*) of Regulations 104. These subsections provide as follows:

(*a*) *General Rule.*

Subject to the provisions of paragraphs (*b*) and (*c*) and except as otherwise provided in sections 23.34 and 23.39, the basis during a consolidated return period for determining the gain or loss from the sale or other disposition of property, or upon which exhaustion, wear and tear, obsolescence, and depletion are to be allowed, shall be determined and adjusted in the same manner as if the corporations were not affiliated (see sections 111 to 115, inclusive), whether such property was acquired before or during a consolidated return period. * * *

(*b*) *Intercompany Transactions.*

The basis prescribed in paragraph (*a*) shall not be affected by reason of a transfer during a consolidated return period, other than upon liquidation as provided in (*c*) (whether by sale, gift, dividend, or otherwise), from a member of the affiliated group to another member of such group.

We do not believe that subsection (*b*) is applicable here. While it is true that these sections purport to govern, during a consolidated return period, the determination of the basis of property generally, an exception has been carved out in the case of stock, which is specially treated in section 23.34. Section 23.38 (*a*) makes this clear with the words "except as otherwise provided in section 23.34." This latter section then makes the provision that the basis of stock is to be adjusted in accordance with the Code.

In *Burnet* v. *Aluminum Goods Mfg. Co.*, 287 U. S. 544, 549, the Supreme Court had occasion to interpret articles 77 and 78 of Regulations 41. Of course, these are not the regulations before us now, but we believe that the Court's approach to the problem is relevant here. Article 78 gave to the Commissioner the authority to require consolidated returns of affiliated corporations and provided that the tax on the group would be "computed in the first instance as a unit on the basis of the consolidated return." The Court said:

These provisions plainly do not lay down any rigid rule of accounting to be applied to consolidated returns which would exclude from the computation of taxable income the results of every intercompany transaction, regardless of its effect upon the capital or the net gains or losses of the business of the affiliated corporations. Instead, they merely disclose the purpose underlying regulations and statute to prevent, through the exercise of a common power of control, any intercompany manipulation which would distort invested capital or the true income of the unitary business carried on by the affiliated corporations. * * *

In the report of the Senate Finance Committee on the Revenue Act of 1928, S. Rept. No. 960, 70th Cong., 1st Sess., 1939–1 C. B. (Part 2) 409, 418, the Committee indicated that "no ultimate advantage under the tax laws really results" when corporations are granted permission to file consolidated returns. The interpretation here given to the pertinent regulations on consolidated returns adheres, we believe, to this Congressional intent.

We hold that the capital distributions made by Texarkana to the petitioner in years when consolidated income tax returns were filed including the two corporations, as well as the capital distributions made in those years when no consolidated returns were filed, reduced the basis of the Texarkana common stock held by the petitioner, and that the gain realized upon the sale of such stock by the petitioner increased in accordance with the determinations of the respondent.

The petitioner in 1948 received capital distributions from Chattanooga in the amount of $19,622.59, and in 1949 received similar distributions in the amount of $25,265.45. These distributions were made on 15,000 of the 20,000 shares of Chattanooga common stock held by the petitioner. Chattanooga was not a member of the affiliated

group for which the petitioner filed consolidated returns for the years 1948 and 1949, since in those years the petitioner owned only 58.82 per cent of the total outstanding shares of voting stock of Chattanooga. The respondent determined that these distributions resulted in capital gains to the petitioner in the years received. This determination was based upon respondent's argument that the capital distributions, in the amount of $290,994.68, made by Chattanooga to the petitioner in years when consolidated returns were filed including the two corporations, and the capital distributions, amounting to $399,048.05, made to the petitioner in those years when no such consolidated returns were filed, reduced the basis of the 15,000 shares ($641,452.50) to zero. Therefore, the capital distributions on the 15,000 shares in 1948 and 1949, being in excess of basis, were treated by the respondent as capital gains to the petitioner under section 115 (d) of the 1939 Internal Revenue Code. The issue here is the same as in the questions involving the basis of the Texarkana stock, and our holding there is controlling. We agree with the respondent's determination that the capital distributions by Chattanooga to the petitioner in 1948 and 1949, being in excess of the basis of the 15,000 shares of stock upon which such distributions were made, were taxable as capital gains to the petitioner in those years.

Similarly, our holding with regard to the basis of the Texarkana stock is applicable in the question involving the basis of the 196 shares of preferred stock and the 804 shares of common stock in Cohasset sold by Greenwich in 1949 for a total consideration of $249,337.63. Both of these corporations were members of the affiliated group for which the petitioner filed consolidated income tax returns for 1949 and for prior years in which consolidated returns were permitted under the Federal income tax laws. The unadjusted basis of this Cohasset stock held by Greenwich was $213,563.82. A reduction of basis in the amount of $6,353.19 for net losses of Cohasset in years for which consolidated income tax returns were filed including the two corporations is not disputed by the petitioner. Capital distributions on such stock by Cohasset to Greenwich amounted to $17,686.27 in years when consolidated returns were filed for the two corporations, and $10,450.72 in those years when no such consolidated returns were filed. The respondent reduced by the amount of such distributions the basis of the stock sold by Greenwich in 1949, and in his determination of capital gains of the petitioner in that year, increased such gains by a similar amount. Our holding with respect to the adjustment of basis of the Texarkana is controlling here, the issue being the same. We hold, therefore, that the respondent was correct in his determinations.

The remaining issue is whether the net operating losses of $36,997.12 sustained by Texarkana in the years 1929 to 1933 are to be applied in reducing the basis of the 1,200 shares of common stock in Texarkana which were acquired by petitioner's predecessor corporation in 1941. Consolidated returns filed by the affiliated group in the years 1929 to 1933 included Texarkana, and the net operating losses of Texarkana were allowed in full as deductions in arriving at the net income for those years of the consolidated group. Capital distributions from Texarkana to the petitioner, under our holding in that issue of the case, reduced the basis of the 4,000 shares of Texarkana common to zero, and also reduced the basis of the 1,200 shares ($115,755.55) by the amount of $28,322.27. The respondent now makes a further reduction in the unadjusted basis of the 1,200 shares of Texarkana common, which was sold by the petitioner in 1948, in the amount of the net operating losses sustained by Texarkana.

Section 23.34 (c) (2), (3), and (4) of Regulations 104 is applicable. After the adjustments to basis are made under section 23.34 (c) (1), a further adjustment to basis, on account of losses, is provided for under section 23.34 (c) (2) of the regulations:

> (2) From the combined aggregate bases as determined in paragraph (1), there shall be deducted the sum of the losses of such issuing corporation sustained during taxable years for which consolidated income tax returns were made or were required * * * after such corporation became a member of the affiliated group and prior to the sale of the stock to the extent that such losses could not have been availed of by such corporation as a net loss or net operating loss * * *

> (3) The sum of the aggregate bases of all shares of stock, after making the deduction under paragraph (2), shall then be apportioned among the members of the affiliated group which hold stock of the issuing corporation, by allocating to each such member that proportion of the sum of the aggregate bases so reduced which the aggregate basis of the stock in the issuing corporation held by such member bears to the sum of the aggregate bases;

> (4) The aggregate basis as determined under paragraph (3) for each member of the affiliated group shall then be equitably apportioned among the several classes of stock of the issuing corporation held by such member according to the circumstances of the case—ordinarily by allocating to each class of such stock that proportion of the aggregate basis which the basis of each class of such stock held by it at the time of the sale is to the sum of the bases of the several classes of such stock held by it;

It is evident from the regulations that no attempt is made to segregate stock according to the time of acquisition of such stock. Furthermore, it appears in section 23.34 (c) (4) that the aggregate basis is allocated to each class of stock held by a member of the affiliated group "at the time of the sale." The obvious purpose of this portion of Regulations 104 is to prevent a consolidated group from enjoying the tax advantage of a double deduction, or its equivalent, from the same net operating loss.

We conclude that the unadjusted basis of the 1,200 shares of Texarkana common stock sold by the petitioner in 1948 is to be reduced by $36,997.12, the amount of the net operating losses sustained by Texarkana in the years 1929 to 1933, and that the gain on the sale of such stock is to be increased accordingly.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

---

MURDOCK and RAUM, *JJ.*, dissenting: We cannot agree with the holding that the basis of the after-acquired stock, obtained by the investment of fresh capital, must be reduced instantly by net operating losses sustained during earlier years. Losses of a subsidiary in prior years were absorbed by other income on consolidated returns. The limits of the tax effects of those losses on the basis of the stock of the subsidiary which the parent then owned (or even subsequently acquired as the result of a split-up of such stock) were fixed. Yet the prevailing opinion holds that the basis of entirely new stock of the subsidiary, subsequently purchased by the parent, is not the cost thereof to the parent, but that it is the cost as simultaneously reduced by old losses of the subsidiary which produced tax benefits in the consolidated return. In effect, the investment of new money is penalized since the investor is required to wipe out past tax benefits which are wholly unrelated to the investment in the new stock. The result is extraordinary; it is not called for by the statute; and the regulations do not focus upon the problem one way or the other.