SOUTHERN CALIFORNIA SAVINGS & LOAN ASSOCIATION, IN ITS OWN BEHALF AND AS SUCCESSOR IN INTEREST TO FIRST SURETY CORPORATION AND ITS SUBSIDIARIES, AND SOUTHERN CALIFORNIA SAVINGS & LOAN ASSOCIATION, A FEDERAL SAVINGS & LOAN ASSOCIATION, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 45338-86.     Filed July 5, 1990.

36

*Martin S. Schwartz*, for the petitioners.
*Fera Wagner*, for the respondent.

OPINION

WRIGHT, *Judge:* Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes:

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)[1] | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
| 1971 | $955 | $48 | - - - | - - - |
| 1973 | 191,500 | 9,575 | - - - | - - - |
| 1974 | 5,791 | 290 | - - - | - - - |
| 1975 | 115,579 | 5,779 | - - - | - - - |
| 1976 | 198,682 | 9,934 | - - - | - - - |
| 1977 | 431,336 | 21,567 | - - - | - - - |
| 1978 | 608,102 | 30,405 | - - - | - - - |
| *1982 | 1,387,173 | - - - | $69,359 | 50% of the interest due on $1,387,173 |

*Short taxable year December 23, 1982 through December 31, 1982.

After concessions by respondent, the issues remaining for decision are: (1) Whether section 461(e) limits an interest expense deduction claimed by Southern California Savings & Loan on a short-period return filed pursuant to the consolidated return regulations; (2) whether Southern Cali-

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

fornia Savings & Loan's method of accounting for interest expense for a short period is unacceptable under section 446(b) because it does not clearly reflect income; and (3) whether petitioners are liable for the additions to tax under sections 6653(a), 6653(a)(1), and 6653(a)(2).

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein.

Petitioner Southern California Savings & Loan Association, a Federal Savings & Loan Association (New SoCal), has its principal place of business in Beverly Hills, California. New SoCal was created by the Federal Savings & Loan Insurance Corp. acting as receiver for Southern California Savings & Loan (SoCal), a domestic building and loan association which in 1985 was declared insolvent by the Federal Home Loan Bank Board.

SoCal filed consolidated returns on a calendar year basis with its affiliated group, which included First Surety Corp. and its subsidiaries, for all taxable periods from 1971 through December 23, 1982. SoCal maintained its books and computed its taxable income under the cash receipts and disbursements method.

On December 23, 1982, SoCal was acquired by National Trust Group. SoCal reported its income for the period prior to its acquisition on the consolidated Federal income tax return filed by its affiliated group for calendar year 1982. For the short period from December 23, 1982 through December 31, 1982, SoCal filed a separate Federal income tax return.

On its return for the short period, SoCal claimed a deduction of $13,759,394 for interest expense. Of the total claimed deduction, $245,359 represents miscellaneous interest expense which is not contested by respondent. Of the remainder, $7,025,413 represents interest accrued during the last 6 months of 1982, while $6,488,622 represents interest accrued solely during December of 1982. All interest for which SoCal claimed a deduction on the short-period return was paid or credited during the short period.

The $13,759,394 claimed interest expense deduction resulted in a net operating loss of $5,945,989 for the short period which was carried back to the consolidated returns of

First Surety Corp. and its subsidiaries for 1971 and 1973 through 1978. Respondent determined that petitioner was entitled to an interest expense deduction of $2,453,394 for the short period and that the rest of the claimed interest deduction, or $11,306,000, must be claimed in equal portions over the next 9 succeeding taxable years.

## I. *Consolidated Return Regulations*

Section 1501 provides that an affiliated group of corporations may file a single consolidated return in lieu of separate returns. The section further provides that in the case of a corporation which is a member of the affiliated group for a fractional part of the year, the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

If the consolidated return of an affiliated group includes the income of a corporation for only a fractional part of the year, then the income for the part not included in the consolidated return must be included in a separate return. Sec. 1.1502-76(b)(2), Income Tax Regs. The regulations provide the following example of the operation of this rule:

Corporations P and S, a group of corporations, filed a consolidated return for the calendar year 1966. As of the close of June 30, 1967, all of the stock of S was sold to individual A. P must file a consolidated return for 1967 including P's income for the entire taxable year and the income of S for the period of January 1, 1967, through June 30, 1967. S must file a separate return for the period July 1, 1967, through December 31, 1967. [Sec. 1.1502-76(b)(3), Example (2), Income Tax Regs.]

If the taxable income of a corporation must be included in part in a consolidated return and in part in a separate return, the taxable income to be reported in each such return is determined on the basis of the corporation's income as shown on its permanent records, including work papers. Sec. 1.1502-76(b)(4)(i), Income Tax Regs.

The regulations also provide that any period of less than 12 months for which either a separate return or a consolidated return is filed under the provisions of section 1.1502-76, Income Tax Regs., shall be considered as a separate taxable year. Sec. 1.1502-76(d), Income Tax Regs. Finally, the regulations provide that "The Code, or other law, shall be applicable to the group to the extent the

regulations do not exclude its application." Sec. 1.1502-80, Income Tax Regs.

Respondent concedes that SoCal filed a separate short-period return because it was required to do so by the consolidated return regulations. Respondent also concedes that had SoCal's taxable year not been bifurcated the full amount of the contested interest would be deductible on the 1982 consolidated Federal income tax return of its affiliated group. Respondent does not contend that in claiming the interest expense on its short-period return SoCal failed to comply with the consolidated return regulations.

Respondent argues that, despite SoCal's compliance with the consolidated return regulations, the interest expense deduction it claimed for the short period is limited by section 461(e).

## II. *Limitation of Interest Expense Deduction Under Section 461(e)*

Prior to 1962, the year section 461(e) was enacted, domestic building and loan associations were permitted by section 593 to deduct, as an addition to their bad debt reserves, an amount virtually equal to their entire taxable income. As part of the Revenue Act of 1962, Congress amended section 593 to reduce the statutory percentage of taxable income available as a deduction for addition to bad debt reserves. Revenue Act of 1962, Pub. L. 87-834, sec. 6, 76 Stat. 977, 1962-3 C.B. 111, 127.

Due to this change, domestic building and loan associations would be liable for appreciably increased income tax. Congress was concerned that, by postponing the payment of interest accrued during 1962, domestic building and loan associations would bunch interest deductions into 1963 or subsequent years and thus avoid a tax liability. Section 461(e) was added to the Code to prevent such manipulation. H. Rept. 2544, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 1235.

Section 461(e) provides, in relevant part, that except as provided in regulations prescribed by the Secretary, amounts paid or credited to the accounts of depositors as interest by a domestic building and loan association are not allowable as a deduction for the taxable year to the extent

the amounts are paid or credited for periods representing more than 12 months. Any amount disallowed by section 461(e) is allowable as a deduction for such other taxable year as the Secretary determines to be consistent with the statute. Sec. 461(e).

As to a short period, the regulations provide that amounts of dividends or interest paid or credited shall not be allowed as a deduction to the extent that such amounts are paid or credited for a period representing more than the number of months in such short period. Sec. 1.461-1(e)(1)(i), Income Tax Regs.; see sec. 1.461-1(e)(2)(i) and (ii), Example *(3)*, Income Tax Regs.

The amount of interest expense disallowed by section 461(e) is allowable, subject to limitations, as a deduction for other periods as provided in the regulations. See sec. 1.461-1(e)(3), Income Tax Regs. The regulations provide that in any case in which it is established to the satisfaction of respondent that the taxpayer does not intend to avoid taxes, one-tenth of the amount disallowed by section 461(e) shall be allowed as a deduction in each of the 10 succeeding taxable years commencing with the taxable year for which the amount is disallowed. Sec. 1.461-1(e)(3)(ii), Income Tax Regs.

Respondent argues that the interest expense deduction claimed by SoCal on its short-period return is limited by section 461(e) to the amount of interest which accrued during the short period, plus one-tenth of the remainder. We disagree.

III. *Section 461(e) Is Inapplicable to a Separate Return Filed Pursuant to Consolidated Return Regulations*

In *Erwin Properties, Inc. v. Commissioner*, 43 T.C. 888 (1965), the taxpayer was a corporation which became a member of an affiliated group of corporations on May 1, 1959. The taxpayer had previously filed its income tax returns on a calendar year basis. The affiliated group filed a consolidated return for the fiscal year ending April 30, 1960. Pursuant to section 1.1502-76(b)(2), Income Tax Regs., the taxpayer filed a return on June 6, 1960, for the short period January 1, 1959 through April 30, 1959. Respondent determined that under the provisions of section 443(b)(1) the

taxpayer was required to annualize its income, giving rise to a deficiency. Because in filing its return for the short period the taxpayer had complied with section 1.1502-76(b)(2), Income Tax Regs., and the regulation did not require annualization for the short period, we held that section 443(b)(1) was inapplicable.

As in *Erwin Properties,* petitioner was required by section 1.1502-76(b)(2), Income Tax Regs., to file a separate short-period return. As did the taxpayer in *Erwin Properties,* petitioner has fully complied with the consolidated return regulations. We find that section 1.1502-76(b)(4), Income Tax Regs., which directs petitioner to allocate taxable income to its separate return in accordance with its permanent records, excludes the application of section 461(e). See sec. 1.1502-80, Income Tax Regs. We therefore hold that petitioner is entitled to the entire interest expense deduction it claimed on its separate return for December 23, 1982 through December 31, 1982.

### Clear Reflection of Income

In addition to his section 461(e) argument, respondent contends that SoCal's method of accounting for interest expense for the short period is unacceptable under section 446(b) because it does not clearly reflect income. Respondent argues that SoCal must deduct interest expense as it accrues, not when it is paid or credited.

Section 591 provides that a domestic building and loan association is allowed a deduction for amounts paid or credited to depositors as interest if such amounts are withdrawable on demand, subject only to customary notice of intention to withdraw. We have held that respondent may not reject, as not providing a clear reflection of income, a method of accounting employed by the taxpayer which is specifically authorized in the Code and has been applied on a consistent basis. *Hallmark Cards, Inc. v. Commissioner,* 90 T.C. 26, 31 (1988). Because SoCal consistently deducted interest expense as provided in section 591, we reject respondent's contention that its method of accounting does not clearly reflect income.

In light of the foregoing,

*Decision will be entered for the petitioner.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, SHIELDS, HAMBLEN, CLAPP, and JACOBS, *JJ.,* agree with the majority opinion.

WHALEN and COLVIN, *JJ.,* concur in the result only.

SWIFT, *J.,* did not participate in the consideration of this opinion.

---

WELLS, *J.,* concurring: In his dissent, Judge Gerber disagrees with the majority's holding that the consolidated return regulations preempt section 461(e). While Judge Gerber questions the majority's reasoning, he does not question the result and declines to decide what the result should be in the instant case. Without specifically disagreeing with the majority's holding, I concur in the result reached by the majority on grounds separate from those upon which the majority relies. More particularly, I believe the regulation respondent seeks to enforce finds no support in the Code.

Section 461(e) does *not* apply in the instant case. Section 461(e) prohibits savings and loan associations from deducting dividends or interest "to the extent such amounts are paid or credited *for periods representing more than 12 months.*" (Emphasis supplied.) The amounts deducted in the instant case represent a period not in excess of *6 months.* Majority op. at 37. Therefore, by its express terms, section 461(e) does not apply to the facts at hand.

While the instant case falls within the language of section 1.461-1(e)(1)(i), Income Tax Regs., which addresses dividends and interest representing periods in excess of a short period, that provision on its face is inconsistent with the express language of section 461(e), which addresses solely amounts representing more than 12 months.

In *Gamman v. Commissioner,* 46 T.C. 1, 6-8 (1966), we held invalid a regulation which provided that if notes given by a subchapter S corporation were "actually stock," they were automatically a second class of stock, resulting in the

corporation's disqualification for subchapter S treatment. We stated that the relevant statutory provision merely disqualified corporations with more than one class of stock and that a regulation may not "extend a statute or modify its provisions." We also, however, inquired into legislative purpose and stated that we had found no evidence in legislative history that Congressional intent supported the regulation in issue in that case.

Legislative history discloses that Congress enacted section 461(e) in order to prevent savings and loan associations and similar financial institutions from "bunching" interest payments into 1963 in order to avoid the effects of a curtailment of the bad debt reserve deduction that became effective in that year, making such institutions effectively taxable for the first time. H. Rept. 2544, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 1235, 1236. Congress was concerned that those financial institutions might defer crediting of interest payments from 1962 (a year for which the institutions were not effectively taxable) to 1963 (the first year for which they became so taxable) and, by such manipulation, lessen their tax bite and decrease the revenues Congress anticipated the change would raise. See legislative history cited in majority op. at 13.

The House Report also contains the following statement: "It is contemplated that *in any cases* involving a short year, the Secretary will use his regulatory authority *already available* to prevent the deduction in such years for periods in excess of the appropriate number of months, or portions of months." 1962-3 C.B. at 1237. (Emphasis supplied.) Respondent argues that the foregoing statement is authority for section 1.461-1(e)(1)(i), Income Tax Regs. Respondent, however, understandably ignores the words "already available" and "in any cases," appearing in the House Report. Those words indicate that when Congress enacted section 461(e) it thought that another Code section, already enacted, conferred upon respondent the authority to disallow, on a case by case basis, dividend and interest deductions attributable to periods in excess of short periods.

Petitioners suggest that Congress might have been referring to section 446(b) (Reply Brief for Petitioners, p. 13), and I agree that that provision is most likely the provision

that Congress had in mind. Respondent does not offer any other suggestion as to the source of the "already available" authority to which Congress referred. Moreover, respondent's authority under section 446(b) reaches not only overall methods of accounting, but also a taxpayer's method of accounting for specific items of income and expense, such as interest. *Prabel v. Commissioner,* 91 T.C. 1101, 1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989), and authorities cited therein. Because it is clear that section 461(e) is *not* the authority for the regulation that respondent seeks to enforce in the instant case, I look next to whether section 446(b) provides authority for the regulation. I think it does not.

Section 446(b) states as follows: "If no method of accounting has been used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, *does clearly reflect income.*" (Emphasis supplied.) While I agree that petitioners' method of accounting for interest has distorted income (deduction of interest in an 8-day period, although interest accrued over a 6-month period on deposits which produced income over that same period), respondent's method of accounting for the "excess" interest (by spreading deductions forward over a 10-year period) reasonably cannot be said to promote a clearer reflection of income, the express object of section 446(b). To the contrary, section 1.461-1(e)(1)(i), Income Tax Regs., makes nine-tenths of the excess interest deductible in future years, *after* the interest has accrued and *after* the deposits have left the financial institution and are no longer producing income. Income is most clearly reflected when income is matched to expenses incident to that income. *United States v. Catto,* 384 U.S. 102, 111 n. 15 (1966) (cash method of accounting for livestock expenses more convenient but less accurate than accrual method because of failure to match income and expense; taxpayers denied permission to switch to cash method with respect to breeding stock). Section 446(b) authorizes respondent to require accounting changes that produce *clearer* reflections of income, not greater distortions of income, such as that produced by the regulation in issue. Courts will not approve

respondent's change of a taxpayer's accounting method from an incorrect method to another incorrect method. *Prabel v. Commissioner, supra* at 1112-1113; *Harden v. Commissioner,* 223 F.2d 418, 421 (10th Cir. 1955), revg. 21 T.C. 781 (1954).

Such distortion might be why respondent does not argue that section 446(b) provides the authority for section 1.461-1(e)(1)(i), Income Tax Regs. Respondent merely argues that petitioners have distorted income and that section 461(e) and its legislative history provide the necessary authority for the regulation which he relies upon as a remedy. In other words, respondent has not suggested what method "does clearly reflect income" in the instant case, but only seeks compliance with the unsupported regulation. Because respondent has not made a determination under section 446(b), the question of whether or not he has abused his discretion under that provision is not in issue. See *Prabel v. Commissioner, supra* at 1112. Only the question of whether or not there is authority for the regulation is in issue. While the majority interprets respondent's argument as a determination under section 446(b), after reviewing respondent's briefs, I respectfully disagree with that conclusion. Respondent only claims that a distortion has occurred and that he has been given broad discretion to accept or reject a taxpayer's method of accounting and method of computing taxable income, citing section 446(b) and the cases construing that section. Rather than seeking a remedy under section 446(b), however, respondent seeks the remedy the regulation in issue provides.

Section 591 and *Hudson City Savings Bank v. Commissioner,* 53 T.C. 70 (1969), which held that section 591 prohibits savings and loan associations and similar financial institutions from deducting interest under the accrual method, raise doubts about whether respondent could have required accrual basis accounting for interest in the instant case by invoking section 446(b). In light of those doubts, I am puzzled by the statement in the legislative history that authority for a regulation respecting short periods was "already available." Congress perhaps should have provided expressly by statute, if it so desired, such regulatory authority.

Regarding the possibility that Congressional intent could be frustrated through adherence to a literal interpretation of the statute, I "cannot say that the legislative history * * * is so persuasive as to overcome the language of [the statute]." *Commissioner v. Acker*, 361 U.S. 87, 93 (1959) (Court invalidated a regulation which provided that failure to file a declaration of tax constituted the reporting of zero tax liability and subjected a taxpayer to an addition for "substantial underestimate," resting its conclusion on the wording of the section imposing the addition and finding that the regulation was not supported by legislative history). The statement in the House Report, standing alone, leaves substantial doubt about what Congress intended as to short periods. A reading of other parts of the legislative history does not find support for the regulation. Although that history indicates that Congress wanted to avoid manipulative "bunching" into short periods, there is no indication whatsoever of what the proper remedy for such bunching might be. Thus, the 10-year amortization of excess interest cannot be approved upon the grounds that the rule furthers Congressional intent.

In sum, I believe that neither section 461(e) nor section 446(b), nor any other Code section, supports the regulation invoked by respondent. In *Gamman v. Commissioner*, 46 T.C. at 6, we stated:

the power of the Commissioner to prescribe regulations for the administration of the Federal tax laws is not the power to make law but is only the power to carry into effect the will of Congress as expressed by the statute. *Manhattan Co. v. Commissioner*, 297 U.S. 129.

While I agree that inquiry into Congressional intent is not foreclosed, Congressional intent does not support the regulation in issue. Because the area appears to be in a state of confusion, I believe the proper course would be legislative correction.

PARR and RUWE, *JJ.*, agree with this concurring opinion.

---

GERBER, *J.*, dissenting: I respectfully dissent because: (1) The majority failed to consider or decide the issue argued by the parties, to wit: whether the section 461(e) regulations governed the outcome of this controversy and/or whether

those regulations are valid; (2) the consolidated regulations and case law generally do not support the majority's holding that section 1.1502-76 of the Income Tax Regulations takes precedence over or preempts section 461(e); (3) the regulation relied upon is not intended to establish a method of accounting or to change an existing method of accounting; (4) the relief granted by the majority is equitable and is rendered without specific comparative analysis explaining why this particular regulation section should be preferred over a statute or why it should be considered a method of accounting rather than a mere device for allocation; and (5) finally, the majority's opinion would cause anomalous results. The remainder of this dissent explains, in greater detail, the above-listed concerns regarding the majority's holding in this case.

The majority opinion relies upon section 1.1502-76, Income Tax Regs., which is essentially procedural in nature, to permit possible avoidance of a statutory tax accounting requirement. Section 1.1502-76(b)(2), (3), and (4) of the Income Tax Regulations is part of a large body of legislative regulations (consolidated return regulations—hereinafter consolidated regulations) promulgated under the congressional mandate of section 1502 to regulate the "privilege to file consolidated returns." The section 1.1502-76 regulations contain broad, procedurally oriented guides for allocating income and deductions where an affiliated member must report part of its income and expenses on a separate return.

In connection with other operative Code provisions, the consolidated regulations may function in one of three ways: (1) The regulations may apply exclusively by expressly excluding the operation of part or all of a specific Code section;[1] (2) the application of the regulations may be subject

---

[1]Several of the sec. 1502 regulations contain express exceptions making the regulations exclusive and causing them to preempt statutory or regulatory provisions which may have provided for a different result than the consolidated regulations. See, for example, sec. 1.1502-3(f)(2)(1), Income Tax Regs. (transfer of sec. 38 property between affiliated group members during a consolidated return year is not treated as a disposition or cessation within the meaning of sec. 47(a)); sec. 1.1502-7(b)(2), Income Tax Regs. (consolidated tax liability shall be determined under sec. 1.1502-2, Income Tax Regs., without regard to the tax surcharge imposed by sec. 51, the minimum tax imposed by sec. 56, any increase in tax under sec. 47(a), relating to early dispositions of investment credit property, or under sec. 614(c)(4)(C), relating to an election to aggregate certain mineral interests); sec. 1.1502-13(c)(ii)(a), Income Tax Regs. (selling member may not report gain on the installment sales method under sec. 453 to the

to the operation of other Code sections;[2] or (3) the regulations may coexist with a Code or regulation provision which is not specifically enumerated in the consolidated regulations. In the context of this case, we deal with the third variety.

Courts have long held that the power granted to promulgate legislative regulations is insufficient to permit the regulator to invalidate a basic concept of tax law or statute. See *Kanawha Gas & Utilities Co. v. Commissioner*, 214 F.2d 685, 691-692 n. 7 (5th Cir. 1954), revg. 19 T.C. 1017 (1953). The power to promulgate consolidated regulations pursuant to section 1502 is the power to conform the applicable income tax law of the Code to the special, myriad problems resulting from the filing of consolidated income tax returns. *American Standard, Inc. v. United States*, 220 Ct. Cl. 411, 602 F.2d 256 (1979). In this vein, section 1.1502-80 of the consolidated regulations provides that "The Code, or other law, shall be applicable to the group to the extent the [consolidated] regulations do not exclude its application."[3]

In determining consolidated taxable income, reference is made to the general provisions of the Code. For example, section 1.1502-12, Income Tax Regs., expressly defers to appropriate statutory sections in connection with the computation of taxable income. It requires that the separate taxable income of a member be computed in accordance with the provisions of the Code covering the determination of taxable income of separate corporations, subject to

extent the gain is otherwise deferred by the selling member under the deferred intercompany transaction rules).

Additionally, the consolidated regulations are legislative in character and have the force and effect of law. *Union Electric Co. of Missouri v. United States*, 158 Ct. Cl. 479, 486, 305 F.2d 850, 854 (1962). To the extent they are not proven to be beyond the scope of authority delegated, inconsistent with the statute or unreasonable, the regulations are valid and a taxpayer's consent to file a consolidated return may therefore preempt or modify the operation of other Code provisions. *Commissioner v. General Machinery Corp.*, 95 F.2d 759 (6th Cir. 1938); *Corner Broadway-Maiden Lane, Inc. v. Commissioner*, 76 F.2d 106 (2d Cir. 1935); *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948); *Bingler v. Johnson*, 394 U.S. 741 (1969). See *Valley Paperback Manufacturers, Inc. v. Commissioner*, T.C. Memo. 1975-311 (sec. 1.1502-76(d) regulations found to be valid).

[2] See, for example, note 3 concerning sec. 1.1502-80, Income Tax Regs., where four different Code sections are expressly enumerated in the regulation.

[3] Sec. 1.1502-80, Income Tax Regs., goes on to provide the example that, "in a transaction to which section 381(a) applies, the acquiring corporation will succeed to the tax attributes described in section 381(c)." Secs. 269, 304, and 482 are also specifically enumerated in the regulation as applicable to consolidated groups.

certain modifications, one of which pertains to methods of accounting pursuant to section 1.1502-17, Income Tax Regs.

Section 1.1502-17(a), Income Tax Regs., provides that "The method of accounting to be used by each member of the group shall be determined in accordance with the provisions of section 446 as if such member filed a separate return." Sections 446 and 461 are both contained in subtitle A, chapter 1E, part II of the Code, which is entitled "Methods Of Accounting." Section 446 states the general rule for methods of accounting. Section 461 provides the rules for claiming deductions under a method of accounting permitted by section 446. The cross-reference to section 446 in consolidated regulation 1.1507-17(a) indicates that the general method of accounting rules are applicable to the affiliated group and are not excluded from application by the consolidated regulations.

In the "de-consolidation" situation (where the consolidated return of a group properly includes the income of a corporation for only a portion of such corporation's taxable year) section 1.1502-76(b), Income Tax Regs., requires that taxable income of the member for the taxable year must be allocated between consolidated and separate returns and the taxable income to be reported in each such return shall be determined on the basis of income shown on the de-consolidated member's permanent records (including work papers). Secs. 1.1502-76(b)(2) and 1.1502-76(b)(4)(i), Income Tax Regs. The parties do not disagree that these regulations would entitle petitioner to a deduction for the accrued and paid interest. Were we to view section 1.1502-76, Income Tax Regs., as the exclusive substantive accounting provision, this would no doubt be the correct result. However, in light of the application of section 446 et seq. pursuant to sections 1.1502-80, 1.1502-11, 1.1502-12, and 1.1502-17, Income Tax Regs., it is relatively clear that the consolidated regulations, and more particularly section 1.1502-76, Income Tax Regs., are not intended to govern methods of accounting or to provide for special methods of accounting for affiliated groups who chose to file a consolidated return. Regulation section 1.1502-76's purpose is to assist in allocating income and losses between separate and consolidated returns.

The problem caused by the majority's choice of preferring the consolidated regulations over the section 461(e) provisions is that it may permit the bunching of deductions which may be prohibited by section 461(e) or the regulations thereunder. The majority does not address the question of whether section 461(e) or the underlying regulations are applicable in the circumstances of this case. It should be noted that neither respondent nor petitioner argued for or against the rationale utilized by the majority to reach its result. On brief, the parties' sole focus was the applicability of section 461(e).

Assuming arguendo that the majority had found that section 461(e) was not applicable to the facts of this case, then it may not have been necessary to dissent because the same result would have been reached upon a proper basis. This dissent does not necessarily question the result reached by the majority, but is directed toward the means utilized to reach the result.

We also note that both the majority's opinion and the opinion in *Erwin Properties, Inc. v. Commissioner*, 43 T.C. 888 (1965) (a case upon which the majority places great reliance), are terse and without specific comparative analysis for the significant finding that a consolidated regulation should preempt a specific statutory provision. We also note that *Erwin Properties* is the only support offered for the majority's holding in this case. The majority also failed to address the "invalidation concept" contained in numerous cases, of which *Kanawha Gas & Utilities Co. v. Commissioner*, 214 F.2d 685 (5th Cir. 1954), revg. 19 T.C. 1017 (1953), and *Corner Broadway-Maiden Lane, Inc. v. Commissioner*, 76 F.2d 106 (2d Cir. 1935), represent a mere sampling. Although petitioner's 8-day lapse is one that may "cry out for equity," we are not empowered to provide relief in the manner utilized by the majority.

Finally, the majority's holding would cause anomalous results. Essentially, only consolidated affiliates which report consolidated income and deductions for the entire taxable year may be subject to the anti-bunching provisions of section 461(e). Any time one of the consolidated affiliates, for any reason, reports income and deductions on a separate return, under the majority's rationale, section 1.1502-76(b),

Income Tax Regs., would come into play and possibly permit bunching in spite of the congressionally mandated prohibition in section 461(e) or possibly other deviations from established or prescribed tax accounting methods.

Accordingly, I respectfully dissent from the majority's opinion.

COHEN, *J.*, agrees with this dissenting opinion.