UNITED STATES STEEL CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
United States Steel Corp. v. Commissioner
Docket No. 5786-72.
United States Tax Court
T.C. Memo 1977-290; 1977 Tax Ct. Memo LEXIS 151; 36 T.C.M. (CCH) 1152; T.C.M. (RIA) 770290; August 29, 1977, Filed A. Chauncey Newlin,Haliburton Fales 2d,David Sachs, and Allan L. Gropper, for the petitioner. Dennis J. Fox,Powell W. Holly, Jr.,William K. Carr,D. Ronald Morello and Alfred C. Bishop, Jr., for the respondent. QUEALY
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined deficiencies in income taxes due from petitioner as follows: *152 Year
Deficiency
1957
$11,100,174.68
1958
$10,272,076.07
1959
$ 9,884,214.27
1960
$16,814,959.53
By agreement of the parties, the issues remaining for decision are as follows: (1) Whether there should be allocated to the petitioner under section 482 [1] a portion of the charges made by its subsidiary for the transportation of iron ore from Venezuela to United States ports; and (2) Whether petitioner realized income in the taxable years 1957 to 1960, inclusive, on account of the repayment of certain advances made by the petitioner to its mining subsidiary in Venezuela by reason of the reduction of petitioner's basis in such obligations as the result of the inclusion in the consolidated returns filed by the petitioner and its subsidiaries for the taxable years 1950 to 1955, inclusive. In United States Steel Corporation v. Commissioner,T.C. Memo 1977-140, this Court held that in order to properly reflect the income of petitioner and to prevent evasion or avoidance of taxes within the meaning of section 482, there should be allocated *153 to the petitioner as additional income a portion of the charges by its subsidiary for the transportation of iron ore from Venezuela to United States ports. This opinion is directed to the remaining issue. SUPPLEMENTAL FINDINGS OF FACT Upon the organization of Orinoco, petitioner paid $10,000,000 for 100,000 shares of its capital stock; and in 1954 petitioner paid to Orinoco an additional $20,000,000 for an additional 200,000 shares of Orinoco capital stock. Petitioner also advanced funds on open account to Orinoco from time to time without charging interest thereon. Outstanding open account balances at the end of each year, 1956 through 1960, owing from Orinoco Mining Company (Orinoco) to petitioner, rounded off, were: 1956
$138,073,000
1957
$129,023,000
1958
$110,043,000
1959
$ 63,062,000
1960
Repayments of these open accounts by Orinoco to petitioner during the years 1955 through 1960 were as follows: 1955
$ 5,500,000
1956
$ 10,899,000
1957
$ 9,050,000
1958
$ 18,980,000
1959
$ 46,981,000
1960
$ 63,062,000
TOTAL
$154,472,000
Respondent determined that allocations were to be made under section 482 to reflect an arm'slength *154 interest rate for the use of the advances by Orinoco for the years 1955 through 1960. As a result, adjustments were made imputing interest income to the petitioner and allowing a corresponding interest deduction in an equivalent amount to Orinoco. Petitioner and respondent entered into a closing agreement pursuant to Rev. Proc. 69-13, 1969-1 C.B. 402, for the years 1956 through 1960 in which petitioner agreed to the imputation of interest at the rate of 5 percent for such years and was allowed offsets against the United States income tax attributable to such imputed interest for the reduction in Venezuelan taxes to which Orinoco would have been entitled had it made such interest payments. For the year 1955, respondent imputed interest at a rate less than 5 percent. The interest rate employed by respondent was the average rate incurred by the petitioner with respect to its 10-year serial debentures issued on August 1, 1954. The average rate prior to August 1, 1955, was 2.275 percent and after that date was 2.3833 percent. The amount of interest imputed at this rate was $3,582,528. These interest rates were determined by respondent and were not established (pursuant *155 to section 1.482-2(a)(2)(ii), Income Tax Regs.) as appropriate rates by petitioner.At a rate of 5 percent per annum, the amount of imputed interest in 1955 would have been $7,721,303. The following schedule indicates the imputed interest and the agreed Venezuelan tax offset for the years indicated: Imputed
Venezuelan Year
Interest
Tax Offset
1955
$ 3,582,528
1956
7,404,971
$ 2,832,401
1957
6,985,153
3,492,576
1958
6,036,513
2,942,800
1959
4,944,029
2,410,214
1960
1,569,444
784,722
TOTALS
$30,522,638
$12,462,713
Respondent and petitioner agreed that petitioner's basis in its Orinoco stock is increased by the amount of interest imputed on the advances to Orinoco for the years 1955 through 1960 less the tax offsets provided in the years 1956 through 1960 for hypothetical Venezuelan taxes. For the calendar years 1950, 1951, 1952, 1953, 1954 and 1955, petitioner and its affiliated corporations, including Orinoco, had their tax liability determined on a consolidated return basis.Petitioner and its affiliated corporations, including Orinoco, filed separate tax returns for the calendar years 1956, 1957, 1958, *156 1959 and 1960. Orinoco incurred net operating losses during the calendar years 1950 to 1955, all of which losses were used to offset profits of other members of the affiliated group. The net operating losses of Orinoco during the years 1950 to 1954 were $570,675.20, $675,538.92, $1,557,668.16, $16,002,594.74 and $20,344,485.71, respectively.The net operating loss for 1955 was $9,704,467.49 or $13,286,995.71 if the deduction for the imputed interest determined by respondent for such year in the amount of $3,582,528.22 is included. For the calendar years 1956 to 1960, Orinoco had taxable income in the amounts of $8,452,216.15, $29,287,693.87, $28,346,381.87, $30,297,699.39, and $52,367,978.06, respectively. Respondent determined in his notice of deficiency that petitioner in 1960 realized income under section 1.1502-35A, Income Tax Regs., in the amount of $15,979,389.78 upon the repayment by Orinoco of petitioner's outstanding advances to Orinoco. Respondent and petitioner subsequently stipulated that, even assuming respondent's then interpretation of the law is correct, petitioner realized no more than $4,378,033 upon the repayment by Orinoco *157 in 1960 of petitioner's outstanding advances to Orinoco, calculated as follows: Losses of Orinoco included
in consoldiated Federal
income tax returns of
petitioner and its sub-
sidiaries
$52,437,958 *
Less: Cost to petitioner
$30,000,000
for Orinoco stock
Imputed interest less tax
offset:
$18,059,925
48,059,925
Maximum income or gain
$ 4,378,033
realized in 1960
In an Amended Answer, respondent determined that the net repayment of these advances by Orinoco to petitioner in each year resulted in the realization of income by petitioner to the extent the face amount of advances repaid exceeded the basis of the repaid advances. Respondent in his brief in answer, filed in this case on February 2, 1976, conceded that petitioner in 1960 realized income of only $702,178.41 as a result of the repayment of advances by Orinoco. OPINION The sole question remaining for decision relates to the income or gain, if any, realized by petitioner during the taxable years 1956 to 1960, inclusive, on account of the repayment by Orinoco of amounts owing *158 to petitioner on "open account." During the taxable years 1950 to 1955, inclusive, the petitioner and Orinoco filed consolidated income tax returns. Such returns included losses of Orinoco, aggregating $52,437,958, [2] which served to reduce the income of other members of the consolidated group. Respondent contends that the basis of the petitioner for computing gain or loss on the sale or other disposition in the stock and obligations due from Orinoco (open account) must be reduced on account of the losses sustained by Orinoco and included in the consolidated returns filed for the taxable years 1950 to 1955, inclusive. In his Amended Answer, respondent treats the difference between the opening balance and the closing balance in the account as a repayment or "disposition" of an obligation of Orinoco during each succeeding taxable year. Both parties agree that the resolution of this issue turns upon an interpretation of the pre-1966 consolidated return regulations and the law with respect thereto. [3] Nevertheless, respondent at times *159 cites the post-1966 consolidated return regulations as supportive of his position in this case. [4] It would be more logical to assume that the later regulations were designed to meet problems which may not have been dealt with properly in the pre-1966 regulations. In fact, the method of adjustment for losses of a subsidiary which had been included in a consolidated return was changed for the second time, effective August 25, 1971, as an amendment to the post-1966 regulations. See, for example, Georgia-Pacific Corporation v. Commissioner,63 T.C. 790 (1975); American Water Works Co. v. Commissioner,243 F.2d 550 (2d Cir. 1957). *160 First, petitioner contends that pursuant to sections 1.1502-34A and 1.1502-35A, Income Tax Regs., the losses incurred by Orinoco and included in the consolidated returns should be reduced by the taxable income realized by Orinoco in subsequent years, notwithstanding the filing of separate returns, before making any adjustment in reduction of the basis of petitioner in the stock and obligations of Orinoco. Secondly, assuming the Court does not agree with the petitioner's primary position, petitioner contends that in the computation of the amount of the adjustment to its basis in Orinoco, so much of the net operating loss of Orinoco for the taxable year 1955 which results from the attribution of interest under section 482 should be eliminated in the filing of the consolidated returns and should not, therefore, apply in the reduction of the petitioner's basis of Orinoco. On the other hand, petitioner contends that such imputed interest must be deemed to have been paid to Orinoco by petitioner, and in turn contributed to the capital of Orinoco. For that reason, petitioner further contends that its basis in Orinoco should be increased in the amount of such interest. Finally, petitioner *161 contends that the amount of interest properly to be imputed on account of the indebtedness of Orinoco for the taxable year 1955 should have been $7,721,303 rather than the amount originally determined by respondent, thereby further increasing the basis of petitioner in the stock and obligations of Orinoco. The respondent's consolidated return regulations have, from the outset, provided for adjustments in the basis of the stock, and in the pre-1966 regulations a further adjustment in the basis of obligations, of the subsidiary in order to reflect losses of the subsidiary which were applied to offset income of other members of the affiliated group in the consolidated return. [5] The purpose of such regulations was to prevent the so-called "double deduction" which otherwise might result where losses sustained by the subsidiary were first deducted against the income of other members of the affiliated group and subsequently reflected again when the stock of the subsidiary was disposed of through a sale, exchange or otherwise. Section 1.1502-34A and section 1.1502-35A, Income Tax Regs., in the pre-1966 regulations were intended to achieve this objective. *162 Insofar as is material herein, subsection (b) of section 1.1502-34A, Income Tax Regs., provides as follows: (b) Sales made while selling corporation is member of affiliated group. If the sale is made within a period during which the selling corporation is a member of the affiliated group, whether or not during a consolidated return period, and whether or not, as a result of such sale, the issuing corporation ceases to be a member of the group, the basis shall be determined as follows: (1) The aggregate bases of all shares of stock of the issuing corporation held by each member of the affiliated group (exclusive of the issuing corporation) immediately prior to the sale, shall be determined separately for each member of the group, and adjusted in accordance with the other provisions of subtitle A of the Code, but without regard to any adjustment under the last sentence of section 1051 relating to losses of the issuing corporation *163 sustained by such corporation after it became a member of the group. (2) From the combined aggregate bases as determined in subparagraph (1) of this paragraph, there shall be deducted the sum of-- (i) All losses of such issuing corporation sustained during taxable years for which consolidated income tax returns were made or were required (whether the taxable year 1929 or any prior or subsequent taxable year) after such corporation became a member of the affiliated group and prior to the sale of the stock to the extent that such losses could not have been availed of by such corporation as net loss or net operating loss in computing its net income or taxable income, as the case may be, for such taxable years if it had made a separate return for each of such years, * * *
For purposes of decision, we may assume that the regulation extends not only to a "sale" of the stock or obligation of Orinoco, as that term is generally understood, but to any disposition. [6]
*164 The basic dispute of the parties relates to the question whether an adjustment should be made, within the meaning of subsection (b)(2)(i), where the losses could have been availed of by Orinoco for taxable years subsequent to the taxable year 1955 during which years separate returns were filed by Orinoco. Respondent contends that the exclusionary rule, whereby the subsidiary's losses are not applied in reduction of the basis of the stock if the losses in question could have been availed of by the subsidiary if it had made a separate return for the years in which such losses were incurred, is limited to the consideration of taxable years during which consolidated returns were filed. The regulation is not without ambiguity. In accordance with the introductory phrase of subsection (b), the transaction which brings about the adjustment may occur at any time during which the subsidiary corporation is a member of the affiliated group, whether or not a consolidated return is filed. It might be inferred that the applicability of the exclusionary language in subsection (b)(2)(i) should be coextensive with that period. On the other hand, looking solely to subsection (b)(2)(i), the phrase *165 "for such taxable years" might be construed as referring solely to the taxable years for which consolidated returns were filed.Accepting the fact that there may be some ambiguity, the Court is left with a choice. In making that choice the primary consideration should be to adopt a construction of the regulation which will achieve the goal sought, namely, the prevention of a supposed "double deduction," and no more.AMBAC Industries,Inc. v. Commissioner,487 F.2d 463 (2nd Cir. 1973). In our opinion, the construction sought by the respondent is not required in order to prevent the so-called "double deduction," but on the contrary, equity is on the side of the petitioner. Taking a simple example, suppose that the basis and fair market value of the subsidiary stock is $100. In the first taxable year the subsidiary has a net operating loss of $50 which is reflected in the consolidated return. In the second taxable year, the subsidiary realizes income of $50 which is likewise reflected in the consolidated return. If the stock is sold for $100 at the close of the second taxable year, the parent would realize no gain. Under the pre-1966 regulations this result follows, *166 not due to the fact that the income of the second year is used to offset the loss of the first year, but by reason of the fact that the loss in the first year could have been availed of by the subsidiary as a carryforward to the second year if it had made a separate return for each of such years. [Section 1.1502-34A, Income Tax Regs.] Under the same circumstances, however, if the subsidiary had filed a separate return for the second taxable year, the respondent's interpretation of the regulation would result in the realization of income or gain of $50 upon the sale of the subsidiary's stock. Regardless whether a separate return was filed in the second taxable year, the amount realized by the selling corporation would be the same. In either event, it may be assumed that a tax was paid on account of the income earned by the subsidiary in the second taxable year, whether by inclusion of such income in the consolidated return or by the filing of a separate return by the subsidiary. So far as the resulting tax liability may be ascertained, there is no difference.A failure to adopt the construction of the regulation advanced by the respondent will not *167 result in a "double deduction." In our opinion, it is necessary to consider both consolidated return periods and nonconsolidated return periods in determining whether an adjustment is required under section 1.1502-34A, Income Tax Regs. Our reading of the regulation is confirmed by a comparison of the treatment of the earnings and losses of the subsidiary under those regulations with the treatment of earnings and losses under the post-1966 regulations.
Under the post-1966 regulations, adjustments to the basis of the stock of the subsidiary reflect the current undistributed earnings or profits (or deficits) of the subsidiary. [Section 1.1502-32, Income Tax Regs.] There may be both positive and negative adjustments, on a year-to-year basis, depending upon the subsidiary's undistributed earnings and profits. On a disposition of the stock of the subsidiary, only the net amount (either positive or negative) is taken into account as an adjustment to basis. Likewise, a "disposition" under the post-1966 regulations is defined to include a change from the filing of a consolidated return to the filing of a separate return without *168 any change in ownership of the stock. On the other hand, under the pre-1966 regulations, the earnings of the subsidiary are not taken into account as a reduction of the adjustment to the basis of the stock resulting from losses availed of in the consolidated return. Instead, the regulation provides that if such losses could have been availed of by the subsidiary if it had made a separate return for the year of the loss, no adjustment was required. This provision serves to net the income and losses of the subsidiary and should apply irrespective whether a separate return was, in fact, filed for the subsequent year so long as there has been no disposition of the stock. Under the pre-1966 regulations, termination of the election to file consolidated returns was not a disposition requiring the determination of gain or loss on the imputed sale of the stock of the subsidiary. Accordingly, it is our opinion that no adjustment to the basis or investment of petitioner in Orinoco is required under sections 1.1502-34A and 1.1502-35A, Income Tax Regs., on account of the losses of Orinoco during the taxable years 1950 to 1954, inclusive, since it appears that if Orinoco had filed separate *169 returns such losses would have been offset against the income reported by Orinoco in its returns for subsequent taxable years during which Orinoco was a member of the affiliated group, including the petitioner. Since no adjustment is required, it is unnecessary to consider any of the other questions relating to this issue. In order to reflect the agreement of the parties with respect to certain of the adjustments set forth in the notice of deficiency with respect to the taxable years 1957 to 1960, inclusive, as well as the opinion of this Court filed May 11, 1977, with respect to the allocation of the income of Navios under section 482, and this opinion, it is hereby ordered: Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
*. Includes deduction for the imputed interest determined by respondent in the amount of $3,582,528.↩
2. Inclusive of interest in the amount of $3,582,528 imputed to petitioner on account of the advances due Orinoco in the taxable year 1955.↩
3. T.D. 6894, 1966-2 C.B. 362, promulgated new consolidated return regulations under sec. 1502, I.R.C. 1954: sections 1.1502-0--1.1502-80, Income Tax Regs. The new regulations are applicable to taxable years beginning after December 31, 1965. The old regulations, applicable to taxable years beginning before January 1, 1966, were redesignated as sections 1.1502-0A--1.1502-51A, Income Tax Regs.Section 1.1502-32 is similar though not identical to section 1.1502-34A↩. 4. For discussion of adjustments to the investment in affiliates under the regulations, see F. W. Peel, Jr., Consolidated Tax Returns 210-251 (2d ed. 1973). Also see J. F. Dring, "Handling Investment Adjustments and Excess Losses Under the New Consolidated Regs" 27 Journal of Taxation 166↩ (1967).
5. The same problem was first dealt with by the Supreme Court in Ilfeld Co. v. Hernandez,292 U.S. 62↩ (1934).
6. To hold otherwise would not materially affect our decision, since the double deductions sought to be eliminated by the regulations, if such is the fact, might also be eliminated under the principles enunciated in Ilfeld Co. v. Hernandez,supra, without regard to any regulations. Marwais Steel Company v. Commissioner,354 F.2d 997↩ (9th Cir. 1965).