Memphis Memorial Park, Inc. v. Commissioner.
Memphis Memorial Park, Inc. v. Commissioner
Docket No. 70313.
United States Tax Court
T.C. Memo 1959-147; 1959 Tax Ct. Memo LEXIS 102; 18 T.C.M. (CCH) 637; T.C.M. (RIA) 59147; July 17, 1959
*102 Under State law petitioner was required to segregate a portion of the purchase price of cemetery lots as a permanent improvement fund and to use all income from such fund only for the improvement of the cemetery. Petitioner paid this segregated portion to a bank under a depository agreement and did not include it in income. The fund was invested in United States Treasury bonds, municipal bonds, first mortgage bonds, stocks, and other securities. Income from these investments was paid to the petitioner, which excluded from its income the interest on municipal bonds as nontaxable interest, and also claimed the 85 per cent dividend credit for dividends received on stock investments. The entire amount received by petitioner was expended for upkeep and deductions for said expenditures taken by petitioner. Held, petitioner was not the owner of the permanent improvement fund for income tax purposes; that the improvement fund was a trust fund for the benefit of the lot owners and not petitioner and petitioner was not entitled to the exclusion or deduction. Charles P. Cobb, Esq., 647 Commerce Title Building, Memphis, Tenn. for the petitioner. Lester R. Uretz, Esq., for the respondent. MULRONEY *103 Memorandum Opinion MULRONEY, Judge: The respondent determined deficiencies in petitioner's income tax for the calendar years, as follows: Year
Deficiency
1950
$1,539.15
1951
2,020.22
1953
2,061.27
1954
4,635.71 All of the facts are stipulated and they are found accordingly. Petitioner is a cemetery corporation organized for profit under the laws of Tennessee with its principal place of business at Memphis. Section 3923 of the Tennessee Code of 1932 provides, in part, as follows: "Improvement fund. - It shall be the duty of each cemetery corporation chartered under the laws of this state and doing business in said state, to set up and forever maintain a permanent improvement fund equal in amount to twenty-five per cent, of the total gross sum paid to such cemetery corporation by purchasers of lots in its cemetery, which fund shall be lent or invested by such cemetery, corporation, with the board of directors or its executive committee approving each loan or investment, so as to yield the best interest rate or return on the investment obtainable; and the interest on said improvement fund shall be used and expended by the officers and directors of such corporation for the permanent improvement, *104 upkeep and beautification of its cemetery, and for no other purpose. * * *" During the years in question petitioner placed 25 per cent of the gross purchase price it received from the sale of lots with the Union Planters National Bank & Trust Company of Memphis under an agreement entitled "Depository Agreement," dated January 1, 1942. The depository agreement recites the requirement of the Tennessee statute to maintain a permanent improvement fund of not less than 25 per cent of the total gross sums paid by lot purchasers, "which said fund shall be invested and the income therefrom applied exclusively to the permanent improvement, upkeep and beautification of such cemetery * * *" and it names the said bank and trust company as depository of the permanent improvement fund. The agreement represents that petitioner has "now delivered" a sum to the depository representing 25 per cent of the total gross sums paid by purchasers of lots up to the date of the agreement and petitioner agrees to continue to place 25 per cent of the gross sales price of lots, in the form of cash or securities, with the depository. The depository agreed to receive and safely keep the cash or securities constituting *105 the permanent improvement fund and all additions and "collect the income periodically arising from such securities and remit the same to" petitioner. The depository bank and trust company was given "no duty with regard to the selection of securities to be held in said improvement fund" and the agreement specifically states "the making of all such investments being the obligation of Memphis Memorial Park." It was also stated in the agreement that the depository could turn over the income to petitioner "without duty upon the Trust Company to see to the proper application thereof by Memorial Park." The funds turned over to the depository in the taxable years for the permanent improvement fund were not included in petitioner's income. The funds in the permanent improvement fund were invested by petitioner in various securities, such as United States Treasury Bonds, municipal bonds, first mortgage notes and stocks of domestic corporations, and during the taxable years in issue, the depository turned over the income it collected to petitioner. During the years 1950 to 1954, inclusive, petitioner received the following amounts representing income from the permanent improvement fund: 1950
1951
1952 *
1953
1954
Dividend Income from Domestic
corporations
$ 750.75
$ 772.00
$ 857.60
$ 911.20
$ 2,014.26
Interest on Municipal Bonds
2,583.22
3,375.02
5,280.18
6,121.62
7,227.95
Income from Other Investments
7,200.68
6,529.55
6,519.25
6,204.55
6,094.60
Total
$10,534.65
$10,676.57
$12,657.03
$13,237.37
$15,336.81
*106 Petitioner, in its income tax returns for said years, which were filed with the collector and/or director of internal revenue at Nashville, reported the above income but treated the interest on municipal bonds as nontaxable interest (under section 22(b)(4), Internal Revenue Code of 1939 and section 103(a), Internal Revenue Code of 1954) and did not include such interest in income. In said returns petitioner reported that portion of the income from the perpetual improvement fund received from dividends from domestic corporations as dividend income earned by it and took an 85 per cent dividend credit (under section 26(b)(1), Internal Revenue Code of 1939 and section 243(a), Internal Revenue Code of 1954) in computing its corporate tax liability. The balance of the income received by the depository from other investments of the permanent fund was included in income by the petitioner. The deficiencies result from the respondent's determination that the entire amount paid by the depository to petitioner in each *107 taxable year constitutes income to petitioner, which cannot be reduced by excluding the income of the permanent improvement fund, that came from municipal bond interest, or by a dividend credit on the income from the fund which came from dividends from domestic corporations. Petitioner argues it is the owner of the permanent improvement fund and thus entitled to the statutory exclusions and dedeuctions in reporting the income from said fund; that the permanent improvement fund is not a trust fund but if it be so considered, then petitioner is the beneficiary of this trust fund and entitled to treat the distribution received as having the same character in its hands as it had in the hands of the trustee. It takes the perspective that history affords to determine the soundness of petitioner's argument. In the days when the Commissioner was seeking to tax as income that portion of the purchase price of cemetery lots that was placed in a perpetual care fund, the argument of taxpayers was that this was not income to them because the fund was entirely beyond taxpayers' control. The taxpayers prevailed in that litigation. The Los Angeles Cemetery Association, 2 B.T.A. 495; Metairie Cemetery Association, 4 B.T.A. 903; *108 Inglewood Park Cemetery Association, 6 B.T.A. 386; Mountain View Cemetery Association, 35 B.T.A. 893; Commissioner v. Cedar Park Cemetery Association, Inc., 183 Fed. (2d) 553; American Cemetery Co. v. United States, 28 Fed. (2d) 918. In American Cemetery Co. v. United States, supra, the rule which the opinion draws from the many decisions on the issue of whether sums placed in perpetual care funds shall be treated as income is stated as follows: "The rule is this: The moneys derived from the sale of cemetery lots shall be treated as income, and no part of that income may be deducted, for taxation purposes, simply because the cemetery corporation has made a general agreement for perpetual maintenance. "[3] In such a case, the corporation is allowed, as an expense of operation, simply such sums as it may have actually expended for maintenance. If, on the other hand, a trust is created, and a taxpayer is bound, either by statute or its agreement, to pay certain sums into a trust fund, and if such trust fund is entirely beyond its control, and if the principal and income from such trust cannot inure to the benefit of the plaintiff, then the sums paid into the trust are not considered *109 as a part of the plaintiff's income. That is as it should be. It makes no difference whether the plaintiff be considered a mere conduit through which a part of the purchase price is passed on its way to the trust company, or whether the payments to the trustee are considered as a reasonable and fair expense of the business which by contract plaintiff is bound to pay; in either event, such sums cannot fairly be treated as income. * * *" In the instant case petitioner took the benefit of the above rule and the 25 per cent of the purchase price of lots, which it received and placed in the permanent improvement fund, has been excluded from its income. This could only be done on the theory that it never had, or else it relinquished, ownership of this 25 per cent of the purchase price of the lots and the permanent improvement fund was a trust fund, "entirely beyond its control." Now petitioner's first argument is that it really does own the perpetual improvement fund and in reporting income therefrom it is entitled to the statutory exclusions and deductions that flow from such ownership. On brief the challenging question is asked: "If it did not own the perpetual care fund, then who did?" *110 We need not find the owner of the perpetual improvement fund. It is sufficient to answer that, for tax purposes, petitioner is not the owner. Petitioner cannot have all of its contributions to the fund excluded from income on the ground it is not the owner and then secure statutory exclusions and deductions on the ground that it is. What has been said with respect to petitioner's contention that it owned the fund is applicable with respect to its contention that the permanent improvement fund was not a trust fund. If no trust was created, then under the rule previously quoted it should have treated the sums it turned over to the depository, which were derived from the sale of its lots, as income. As a matter of fact, this very depository agreement was practically held to be a trust in Memphis Memorial Park v. McCann, 133 Fed. Supp. 293. As is said in Chicago Ry. v. Des Moines Ry., 254 U.S. 196, 208: "It needs no particular form of words to create a trust, so there be reasonable certainty as to the property, the objects, and the beneficiaries. * * *" Such a trust could be created by parole and where the law commands the fixed percentage of purchase price to be for perpetual care, *111 the amounts so received are impressed with a trust when received. Inglewood Park Cemetery Association, supra; Metairie Cemetery Association, supra. But again we feel there is no necessity to make an extended analysis of the depository agreement or to delve deeply into the law of trusts to see if a valid trust were created. The argument that it was not is foreclosed to a taxpayer who has taken exclusions from income on the ground the excluded sums were placed in trust. Petitioner's last argument is grounded on the premise that if a trust were created, it was the beneficiary. It clearly was not. True, the income had to be turned over to the taxpayer but it had to be used for a defined service. The beneficiaries of the trust were the lot purchasers. Memphis Memorial Park, 28 B.T.A. 1037. The income from the permanent improvement fund had to be used as the statute commanded: "for the permanent improvement, upkeep and beautification of its cemetery * * *." This would not bring gain or income to petitioner. The Los Angeles Cemetery Association, supra.A good way to test who is the beneficiary of the trust is to ask who could institute suit to compel compliance with the trust provisions *112 or the statutory provision requiring income be devoted solely to improvement, upkeep and beautification. Admittedly the beneficiary of a trust can always maintain a suit to compel performance or halt its breach. Restatement Trusts, Sec. 199. No one would argue petitioner could bring such a suit. In fact, the opinion in Memphis Memorial Park v. McCann, supra, states petitioner has been the defendant in a suit brought by the owner of a cemetery lot to compel compliance with the statutory provisions with respect to the permanent improvement fund. There is much merit in the suggestion in respondent's brief that petitioner would not need to report the income from the improvement fund at all and by the same token none of the maintenance expenses paid for with the trust income would be deductible. It was stipulated more than the entire income from the permanent improvement fund received each year was spent for maintenance. Such suggested treatment would be consistent with the cited cases where petitioner and other taxpayers similarly situated succeeded in convincing the courts they were not the owner or beneficial owner of the perpetual improvement fund. But, as respondent points out, as *113 a practical matter, the tax result would be the same if petitioner would include all of the income from the fund in its income and take deductions for the expenditure of all such income upon improvements. Cf. Rev. Rul. 58-190, and discussion of situations in this general area. The identical issue here involved was present in John J. Harden, 21 T.C. 781, reversed on another issue, Harden v. Commissioner, 223 Fed. (2d) 418. There the taxpayer had to make improvements to the cemetery at his own expense but there was a perpetual care fund created by 10 per cent of the gross sales price of the cemetery lots and the income from this fund was added to the expense fund used by the taxpayer to pay current expenses and maintenance and upkeep of the cemetery. There, as here, part of the perpetual care fund was invested in municipal bonds and this interest and the other income were turned over to the taxpayer to be used for expenses of the cemetery. There, too, the taxpayer reported all but the municipal interest received from the trust and contended the interest on the municipal bonds retained its tax-free status. In holding against the taxpayer in the Harden case, we said: "The parties argue *114 on the second point as to whether the municipal bond interest retained its exempt character when it came into the hands of the petitioner. He reported as his income all but the municipal interest of the amount which he received from the trust pursuant to the provisions of the agreement between him and the trust dated December 14, 1917. Those provisions as shown above required that the income from the perpetual care fund be added to the expense fund and the whole be used by the petitioner to pay various expenses of the business insofar as necessary. This record indicates that the amounts thus withdrawn by the petitioner during the taxable years would not affect his net income if properly reported because he used all of the money to pay expenses incurred in the operation of the cemetery. If he took the entire amount into his gross income in each year and then deducted it all as expenses, the result would be the same as it would be if he took none of it into his income and deducted none of it as expenses. Instead, he took part of it into his income and apparently deducted all of it as expenses. Consequently, the net result arrived at by the Commissioner's adjustments is a proper one because *115 it puts the whole amount withdrawn into income and allows it to be entirely offset by deductions of the expenses for which the money was expended. The petitioner may not further reduce his income by excluding the part of the funds which came from municipal bond interest." Petitioner points to distinguishing facts in the Harden case such as there the taxpayer was an individual promotor developing the cemetery under an agreement with the landowners and he had no responsibilities with respect to the perpetual care fund. The difference is a factual immateriality which does not point a legal distinction. The principle is the same. Petitioner here is neither the owner of the permanent improvement fund nor the beneficiary of the trust fund. The income of the fund is paid over to petitioner for a particular use and purpose - the upkeep and beautification of the cemetery and for no other purpose. If petitioner is to take deduction from income for all of the expenses of maintenance it must report all it is paid by the depository for services rendered in the maintenance. Decision will be entered for the respondent. Footnotes
*. No deficiency was determined for 1952, due, apparently, to an operating loss. The figures for that year are included merely to complete the picture and show consistent treatment.↩