**The OAK WOODS CEMETERY ASSOCIATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 59–C–1010, 62–C–192.**

United States District Court
N. D. Illinois, E. D.

July 24, 1964.

---

Walter J. Hartmann, Arthur R. Kiefer and A. Daniel, Feldman, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff.

James P. O'Brien, U. S. Atty., for defendant.

CAMPBELL, Chief Judge.

The plaintiff, Oak Woods Cemetery Association, hereinafter referred to as "Oak Woods", brings these actions seeking a refund of certain income taxes and assessed interest paid for the years 1952, 1953, 1956, 1957 and 1958. The facts are not in controversy and have been stipulated to by the parties. I adopt this factual stipulation and the accompanying 19 exhibits as my findings of fact.

The stipulation establishes that Oak Woods, a specially chartered Illinois Cemetery Corporation, has from time to time since its creation in 1853 sold interment space. Pursuant to an 1869 charter amendment giving its Board of Director the right to "set apart" and invest portions of sales proceeds for permanent lot improvement, it is further established that subsequent to 1894, Oak Woods did, to provide for the care of the cemetery lots, set aside what will hereinafter be referred to as "perpetual care funds" or the "fund". Various perpetual care agreements, some eight in all, were entered into with interment space owners or subsequent purchasers.

It is my conclusion of law that these agreements created an express trust for the purpose of holding the perpetual care funds. The purchasers together with Oak Woods were the settlors and as a group the purchasers were and are the ultimate beneficiaries. Oak Woods was and is the trustee.

At the time of receipt the perpetual care funds were not included in taxable income by Oak Woods. The accounting procedure and formal tax treatment of these funds however, was changed somewhat in 1936, when among other things Oak Woods made use of a fiduciary return.

The present issue concerns income generated from investment of these perpetual care funds. More specifically, it is contended by Oak Woods that the income is its own, and as such it should have been permitted to claim the Section 243 85% intercorporate dividend deduction. (26 U.S.C. 1958 ed. § 243; § 26(b)(1) of the Internal Revenue Code of 1954. § 26(b)(1) of the Internal Revenue Code of 1939 which is applicable to the years 1952 and 1953 is for the present purposes similar to § 243.)

The government, on the other hand, contends that the perpetual care fund income is not the income of Oak Woods but is the income of the perpetual care fund trust and that therefore the inter-corporate dividend deduction is not applicable. (Assuming the correctness of the government's contention that a person or entity other than the corporation—i. e. the trust—was the recipient of these dividends then there can be no question but that the inter-corporate dividend deduction would not apply.) The government further argues that Oak Woods action in resisting taxation at the time the funds were initially acquired, and Oak Woods action in filing (subsequent to 1936) fiduciary returns as to the fund, now foreclose its asserting that the fund

is Oak Woods, notwithstanding the existence or nonexistence of a trust.

Fortunately, the Seventh Circuit Court of Appeals has considered and decided many relevant aspects of the instant case in Commissioner v. Cedar Park Cemetery Association, 183 F.2d 553 (7 Cir. 1950). This decision all but precludes a cemetery from denying the existence of a trust as to perpetual care funds not declared by the cemetery as income.

■ In Cedar Park the cemetery argued that it should be permitted to exclude from gross income that portion of the interment space sales price paid for perpetual care. Its argument was well received; the Court held, and in my opinion, wisely, that the perpetual care money was paid into a trust fund and as such was not taxable income to the cemetery corporation. The various facts upon which the Court predicated the existence of the trust are for the most part present here, and in this aspect I accordingly hold the case is controlling. The factual situations in Cedar Park and in the instant case are almost identical, with the possible exception that in Cedar Park (p. 555) " * * * no money was actually paid into a separate trust fund." The Cedar Park decision rests primarily on the cemetery's obligation to segregate perpetual care funds. Unquestionably, we have a similar obligation to segregate in the instant case. Admittedly, none of the eight perpetual care agreements used by Oak Woods contain language clearly indicating the creation of a trust. (Exhibits C, D and E do specifically mention the term trust and patently indicate the creation thereof by execution of the respective instruments.) However, in all but three of the agreements (Exhibits A, F and G) it is provided that the money is to be set apart. In any event the money obtained pursuant to the execution of Exhibits A, F and G was in fact set apart and co-mingled with the fund. Moreover, all of the agreements at the very least obligated Oak Woods to render perpetual care services to the contracting party. Accordingly, I find that the perpetual care funds are held by Oak Woods

as trustee and therefore Oak Woods may not avail itself of the inter-corporate dividend deduction. See, also, Metairie Cemetery Association v. United States, 282 F.2d 225 (5th Cir. 1960); Memphis Memorial Park v. Commissioner, 18 T.C. M. 637 (1959).

In light, no doubt, of the Cedar Park decision, Oak Woods does not seriously deny the existence of a trust. Rather, it contends in the main that the funds were not initially received in trust but subsequent to their acquisition by Oak Woods were placed in a trust with Oak Woods as the beneficiary.

I find this argument without merit. It was the initial transaction, the perpetual care agreements, entered into between the interment space owners or buyers and Oak Woods that either created or failed to create the trust. Oak Woods contention that the agreements neither called for nor created a trust i. e.—an obligation to segregate in the words of Cedar Park —but rather, that after having once received the funds Oak Woods gratuitously obligated itself to the space owners, is unsupported in either law or logic and has no factual basis.

Although, as I have already pointed out, the perpetual care agreements standing alone differ from Cedar Park in their legal consequences to a marked extent, nevertheless, when considered in light of Oak Woods own 1869 Charter Amendment and Oak Woods bookkeeping and tax treatment of the funds there is clearly imposed on Oak Woods a Cedar Park "obligation to segregate trust." This obligation clearly runs to the present lot owners and not back to the obligor.

■ Further, basic Illinois Common Law is dispositive of Oak Woods present contention. A person or entity cannot under Illinois' Equity doctrine of Merger hold both a legal and equitable title to a fund and still allege the existence of a trust. Absent a separation of these interests a trust is impossible. Restatement of the Law of Trust § 99(5).

In Cedar Park the Court cites as authority the decision of the 9th Circuit

(Portland Cremation Association v. Commissioner, 31 F.2d 843), holding that cemetery maintenance fund money is taxable to the cemetery unless it was placed beyond the cemetery's " * * * power to use, disburse or diminish". (See page 556 of that decision). Such language cannot be reconciled with Oak Woods' contention that the funds were not initially received but only later placed in trust with Oak Woods and not the space owners as the beneficiary.

I conclude that Oak Woods action in not declaring as income the perpetual care funds when initially received is of evidentiary value in proving the existence of a trust. Having determined and I do hereby so determine the existence of such a trust I need not and therefore do not consider the government's alternative argument that such action by Oak Woods estops it from making the present claim.

Accordingly, I find the issues for the defendant and it is hereby ordered, adjudged and decreed that plaintiff's action be and the same is hereby dismissed on the merits and that defendant have and recover from plaintiff its costs in the action.